UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**   : | |
| : | Criminal No.   05-216 (RMU) |
| **v.**   : | |
| : | |
| **MARCUS MITCHELL,**   : | |
| : | |
| **Defendant.**   : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's Motion to Suppress Evidence and Statements. In support of this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding these motions.

**I.       Factual Background**

The defendant is charged in a four count indictment with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), Unlawful Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1), and Simple Possession of a Controlled Substance, in violation of 21 U.S.C. § 844(a).

At a hearing or trial in this matter, government counsel expects the evidence for this charge to demonstrate substantially as follows: On May 5, 2005, at approximately 7:25 pm, officers from the Metropolitan Police Department (MPD) were on patrol in the xxx block of xxxxxxx xxxxxx, Southeast, Washington, DC, when they observed a blue Cadillac STS bearing DC tags double parked

and blocking the flow of traffic. The officers exited their cruiser and approached the Cadillac to find out why the vehicle was double parked, at which time the defendant was observed to be sitting in the front passenger seat. The officers made contact with the defendant and the driver of the vehicle, and observed a bottle of suspected alcohol next to the defendant in between the front passenger seat and the center console. The officers also observed a clear plastic cup inside a cup holder near the dashboard, which contained a brownish liquid substance. The defendant then picked up the cup and spontaneously stated, "[t]hat's mine, he's not drinking. I am. I'm 21." In response, the officers asked the defendant to step out of the vehicle and place his hands on the vehicle, in order to place him under arrest for Possession of an Open Container of Alcohol.

      The defendant stepped out of the vehicle and then attempted to flee toward the rear of the vehicle. As the officers attempted to grab the defendant he was able to shake off his jacket, which fell to the ground. The officers were able to place the defendant in handcuffs despite his continued efforts to resist. The defendant's jacket was located approximately three feet away from the location of where the defendant was apprehended. The defendant was placed under arrest for Possession of an Open Container of Alcohol. A search of the defendant's person incident to arrest revealed 12 small ziplock baggies containing a white rock-like substance located in his left front pants pocket. Recovered in the defendant's right front pants pocket was one ziplock bag containing a green weed-like substance. Also recovered from the defendant's pants pocket was $143.00 in U.S. Currency. A field test conducted on the white rock-like substance was positive for the presence of cocaine, while the field test performed on the green weed-like substance was positive for the presence of THC, the active chemical in marijuana. The bottle initially observed next to the defendant bore the label "Remy Martin," and contained a liquid which had an odor consistent with an alcoholic

beverage. The cup also had contained the same liquid substance found in the bottle, and had an odor consistent with alcohol.

As the defendant was being placed under arrest and searched his mother came on the scene, at which time he spontaneously told her several times to pick up his jacket. As the defendant's mother began to approach the jacket the officers instructed her not to touch the jacket. The officers recovered the defendant's jacket and found inside the left pocket a .40 caliber semi-automatic pistol loaded with eight rounds of ammunition, including one round in the chamber. The gun was test fired and found to be operable. This type of gun and ammunition are not manufactured in the District of Columbia. Also recovered from the defendant's wrist were numerous red rubber bands which matched the rubber bands which were wrapped around the handle of the gun recovered from the defendant's jacket.

As the officers were placing the defendant under arrest, he shouted at one of the officers, "[t]ake these cuffs off me, I'll fucking kill you nigger." When the officer advised the defendant that he was under arrest the defendant responded, "[f]uck you," and spit on the officer. The defendant then stated, "I'll get out one day and I'll fuckin' kill you mother fucker."

In his Motion to Suppress Evidence and Statements the defendant asserts that his arrest was without probable cause or reasonable suspicion and therefore the evidence and statements must be suppressed. The defendant further asserts that his statements were made in violation of Miranda and were otherwise obtained involuntarily.

II.     **The Officers Had Probable Cause to Arrest the Defendant and Search His Person**

    A.     There was no Fourth Amendment seizure when the officers approached the vehicle.

It is well established that police may make contact with citizens and investigate criminal activity without triggering the protections of the Fourth Amendment. <u>United States v. Mendenhall</u>, 446 U.S. 544, 552 (1980). Only when police officers have restrained the liberty of an individual, by means of physical force or show of authority," is there a "seizure" within the meaning of the Fourth Amendment. <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n. 16 (1968). Thus, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." <u>Terry</u>, 392 U.S. at 22. The test is whether "a reasonable person would have believed that he was not free to leave." <u>Mendenhall</u>, 446 U.S. at 544 (footnote omitted); <u>accord</u> <u>Michigan v. Chesternut</u>, 486 U.S. 567, 573 (1988).

In this case, the officers observed the vehicle in which the defendant was riding as a passenger double parked and blocking traffic. In response, the officers approached the vehicle to investigate why the vehicle was stopped and obstructing traffic. Accordingly, no traffic stop was ever initiated by the officers, and the officers engaged in no "show of authority" by merely approaching the vehicle to inquire as to the reason that the vehicle was stopped in traffic. Therefore, there was no seizure for Fourth Amendment purposes when the officers first approached the vehicle. Only after approaching the vehicle, which the officers were lawfully permitted to do, did they then observe conduct which gave rise to probable cause to effect an arrest.

    B.    <u>If the vehicle was seized it was justified by probable cause and reasonable suspicion.</u>

Even if the court determines that the officers had initiated a traffic stop by approaching the vehicle, any such stop was justified and supported by probable cause. "'The Fourth Amendment does

not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one." United States v. Mitchell, 293 U.S. App. D.C. 24, 28, 951 F.2d 1291, 1295 (1991) (failure to signal and speeding were sufficient to stop car, and seizure of cocaine and guns was upheld). The officer's action in making a traffic stop is viewed objectively by considering the police conduct "in light of the facts and circumstances then known to him." Scott v. United States, 436 U.S. 128, 136, reh'g denied, 438 U.S. 908 (1978). Further, the Supreme Court has held that an officer making a traffic stop may order passengers to get out of a vehicle pending completion of the stop. Maryland v. Wilson, 519 U.S. 408, 410 (1997); Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977).

As stated above, the officers observed a vehicle which appeared to be illegally parked and obstructing the flow of traffic. Upon approaching the vehicle, the officers immediately observed a bottle of suspected alcohol next to the defendant along with a cup containing a liquid consistent with the color and odor of alcohol. Furthermore, prior to being in police custody, the defendant spontaneously stated, "[t]hat's mine, he's not drinking. I am. I'm 21." Based upon the aforementioned facts, the officers had probable cause to arrest the defendant for Possession of an Open Container of Alcohol.[1]

It is axiomatic that the police may arrest someone without first obtaining an arrest warrant where the police have probable cause to believe that person is committing or has committed a criminal offense. Florida v. White, 526 U.S. 559, 565 (1999). Probable cause must be evaluated in terms of the totality of the circumstances, as viewed by a reasonable and prudent police officer in

---

[1] Possession of an Open Container of Alcohol is a misdemeanor offense in the District of Columbia pursuant to 25 D.C. Code § 1001(a).

light of his or her training and experience, that would lead the officer to believe that a criminal offense had been or is being committed. See United States v. Green, 670 F.2d 1148, 1151 (D.C. Cir. 1981); Brinegar v. United States, 338 U.S. 160, 175 (1949). As stated above, the officers had probable cause to believe that the defendant was in possession of an open container of alcohol, and therefore, had a sufficient justification to place him under arrest. Accordingly, the search of the defendant's person and his jacket was justified as a valid search incident to a lawful arrest. See United States v. Robinson, 414 U.S. 218, 224 (1973); Chimel v. California, 395 U.S. 752, 763 (1969).

Assuming the court finds that the officers did not have probable cause to believe that a traffic infraction had occurred at the time they approached the vehicle, the officers had reasonable suspicion to believe that a traffic offense was occurring when they saw the vehicle double parked and obstructing traffic. At a minimum, it was certainly reasonable for the officers to approach the vehicle in order to investigate the reason the vehicle was stopped in traffic. It is well settled that a police officer may briefly detain a suspect if he has a reasonable articulable suspicion that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1 (1968). Articulable suspicion is substantially less than probable cause, but more than a mere hunch or generalized suspicion. United States v. Sokolow, 490 U.S. 1, 7 (1989) (requiring some minimal level of objective justification). Once the officers approached the vehicle they observed the open container of suspected alcohol in the vehicle, which at the very least, provided them with reasonable suspicion to believe a crime was being committed. Accordingly, the officers were justified in further detaining the defendant and the driver in order to determine to whom the alcoholic beverage belonged. Given the proximity of the defendant to the bottle of liquor and the cup containing the liquid substance, as well as the

6

defendant's admission that the beverage was his, the officers had probable cause to place the defendant under arrest.

### III. Defendant's Statements are Admissible Against Him.

As stated above, the defendant's arrest was lawful. Accordingly, there is no basis to suppress his statements as the fruit of an illegal arrest. The defendant argues that any statements made by him were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), or otherwise made involuntarily in violation of Lego v. Twomey, 404 U.S. 477, 489 (1972). Under Miranda, custodial interrogation automatically triggers numerous procedural safeguards to protect an individual's Fifth Amendment right against compulsory self-incrimination. As explained in Miranda, custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444. The Court has stressed that these safeguards come into play only when the defendant is subject to both custody and interrogation. Rhode Island v. Innis, 446 U.S. 291, 297 (1980); Beckwith v. United States, 425 U.S. 341, 347 (1975). Thus, in the absence of either factor, Miranda safeguards do not apply.

At the time the defendant made the admission that the alcoholic beverage in the vehicle belonged to him, he was neither in police custody nor subjected to interrogation by the police. The defendant's statement was made spontaneously prior to arrest, and therefore, the procedural safeguards of Miranda do not apply and the statement should be admitted. Similarly, the defendant's statements to his mother to pick up his jacket and the threatening statements directed toward the arresting officers were also not made in response to police interrogation. Therefore, these statements are also admissible.

A statement is voluntary for purpose of due process so long as the statement is "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (citing Columbe v. Connecticut, 367 U.S. 568, 602 (1961)). Moreover, for a statement to be involuntary, it must have been caused by government overreaching. Colorado v. Connelly, 479 U.S. 157, 163-64 (1986) ("[a]bsent police conduct casually related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law"). There is no indication of such conduct in this case. Moreover, even if there were, there is no indication in this case that under the totality of the circumstances, Lego v. Twomey, 404 U.S. at 489 (government has burden of establishing under preponderance of the circumstances that the confession was voluntary), defendant's will was overborne. See Rogers v. Richmond, 365 U.S. 534, 544 (1961) (government conduct must be "such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined").

In order to determine whether a statement was voluntarily made, the court must examine the totality of circumstances to determine whether an individual's "will has been overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. at 225; Harris v. Dugger, 874 F.2d 756, 759-62 (11th Cir.) (confession voluntary even though defendant in forearm cast and handcuffed during six-hour interrogation), cert. denied, 110 S. Ct. 573 (1989); United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir. 1988) (promises that cooperation would be communicated to prosecutors insufficient to overcome will); United States v. Yunis, 859 F.2d 953, 961 (D.C. Cir. 1988) (defendant's seasickness, his uncomfortably hot room, and his unfamiliarity with American legal culture not a legally adequate basis for concluding that confession was involuntary); United States v. Pelton, 835 F.2d 1067, 1072-73 (4th Cir. 1987) (FBI agent's

assertion that would launch full-scale investigation if defendant did not cooperate not sufficient to render statements involuntary), cert. denied, 486 U.S. 1010 (1988). Testimony at a pre-trial hearing in this case will demonstrate that the statements made by the defendant were voluntary.

        WHEREFORE, the government respectfully requests that the Court deny defendant's motion.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        UNITED STATES ATTORNEY
        BAR NO. 451058

        _____
        STEVEN B. WASSERMAN
        ASSISTANT UNITED STATES ATTORNEY
        D.C. BAR NO. 453-251
        NARCOTICS SECTION
        (202) 307-0031

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Government's Memorandum In Opposition to Defendant's Motion to Suppress Evidence and Statements is to be served upon counsel for the defendant, Lara Quint, Esquire, this 5th day of July, 2005.

        _____
        STEVEN B. WASSERMAN
        ASSISTANT UNITED STATES ATTORNEY