UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No.  05-216 (RMU) |
| v. : | |
| : | |
| MARCUS MITCHELL, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case.

**I.    INTRODUCTION**

1.  Pursuant to a plea agreement, on October 4, 2005, the defendant plead guilty to Unlawful Possession With Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and Using, Carrying or Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1).

2.  As he has one prior felony drug conviction, and one additional juvenile felony drug conviction, the defendant is correctly placed in criminal history category IV.

3.  Based upon a total offense level of 15 and a criminal history category of IV, the Guideline range for imprisonment on the narcotics charge is 30-37 months.

**II.    SENTENCING LAW AFTER BOOKER**

4.  The Court should impose a sentence within the Sentencing Guideline range.  In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in

Blakely v. Washington, 124 S. Ct. 2531 (2004). The Court invalidated the statutory provision that made the Guidelines mandatory: Title 18, United States Code, Section 3553(b)(1). Booker, 124 S. Ct. at 764. The Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. § 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Booker, 124 S. Ct. at 766.

5. In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker 124 S. Ct. at 767 (citing 18 U.S.C.A. §§ 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range presumptively reasonable, but it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

6. The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country,

and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in Section § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

7. Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. 994(m) (requiring Commission to "ascertain the average sentences imposed... prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 124 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions...

and revising the Guidelines accordingly").

8.  It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. This view is shared by Congress and the Supreme Court. As every Supreme Court Justice in the various opinions in Booker recognized, the Guidelines embody the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

9.  Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, at 766. Nevertheless, the Guidelines – resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. § 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker does not allow courts to substitute their individual judgment about the appropriateness of the Guidelines range

without justifying why their sentence takes the case outside of the heartland of situations already contemplated by the Guidelines. See Section 3553(c) (mandating consideration of the Guidelines); section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range).

10.     Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v. Wilson, 350 F.Supp.2d 910 (D. Utah, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.[1]

---

[1] In United States v. Ranum, 353 F.Supp.2d 984 (E.D. Wisc., 2005), the court takes issue with the observation in Wilson that post-Booker courts should depart only in unusual cases and for clearly identified and persuasive reasons. Ranum's arguments are unpersuasive. Ranum fails

11.  In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for Guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the appropriate Guidelines range.

### III.    GOVERNMENT'S RECOMMENDATION

12.  The Sentencing Guideline range is not only presumptively reasonable, for the reasons outlined above, but it is reasonable and appropriate for this defendant based upon the facts of this case and his criminal history. The defendant's criminal record dates back to 2001, in which he was convicted as a juvenile for Possession With Intent to Distribute Cocaine While Armed. The defendant received a sentence of one year of probation, which was revoked on January 16, 2004. On September 27, 2004, the defendant plead guilty to Distribution and Attempted Possession With Intent to Distribute Cocaine. The defendant received a suspended sentence for this conviction, and two years of probation pursuant to the Youth Rehabilitation Act of 1985. However, on September 15, 2005, his probation was revoked and he was sentenced to two years of imprisonment. These prior offenses coupled with his conviction for the instant offense establish the defendant as a danger to the community, and an individual who is not amenable to community supervision. In addition, the defendant has squandered the opportunities previously afforded him by the two lenient sentences

---

to explain why Booker, by severing the provisions which make the Guidelines mandatory, would invite courts to depart in usual or ordinary cases, or for unclearly identified or unpersuasive reasons. Nor is an explanation for such a departure apparent in any other source. Section 3553(a), which sets forth sentencing considerations, including reference to the Guidelines, is but one part of an entire statutory scheme. For example, Section 3553(c), which mandates written explanations for the imposition of non-Guidelines sentences, remains intact. To ignore the rest of the statutory scheme designed to effectuate the implementation of the considerations enumerated in the provision – in particular the expertise of the Sentencing Commission, the formation of the Guidelines, and congressional oversight of the Guidelines – would be an unreasoned approach to determining a sentence.

he has received for his prior convictions.

Furthermore, the defendant's conduct toward the arresting officers in this case, to wit, spitting at them and threatening to kill them, demonstrate a significant level of disrespect for the law and of law enforcement officers. Accordingly, for these reasons, the Government submits that a sentence within the Guideline range is eminently reasonable for this defendant.

13. Therefore, consistent with the plea agreement, the Government is recommending that the Court sentence the defendant on the narcotics charge at the low end of the Guideline range. First, as noted above, that sentence is within the Guideline range and is therefore presumptively reasonable. Second, the defendant's record includes a series of dangerous crimes that suggest that a Guideline compliant sentence is appropriate. Finally, the possession of a firearm and narcotics in the District of Columbia is a particularly serious offense given the extraordinary level of violence in the city associated with drugs and guns, which includes the recent murders of many juveniles and numerous innocent victims.

14. Finally, the government requests that the defendant be placed on supervised release for a period of three years.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
BAR NO. 451058

_____
STEVEN B. WASSERMAN
ASSISTANT UNITED STATES ATTORNEY
D.C. BAR NO. 453-251
FEDERAL MAJOR CRIMES SECTION
(202) 307-0031

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing government's Memorandum in Aid of Sentencing is to be served upon counsel for the defendant, Leonard Long, Esquire, and faxed to Ms. Elizabeth Suarez of the United States Probation Office, this 6th day of January, 2006.

_____
STEVEN B. WASSERMAN
ASSISTANT UNITED STATES ATTORNEY